**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **HEIDY RIVERO** | * | |
| | * | |
| **v.** | * | **Civil No.  PWG 13-2392** |
| | * | |
| **UMBERTO'S ITALIAN** | * | |
| **RESTAURANT, INC., et al.** | * | |
| | * | |

## REPORT AND RECOMMENDATION

This case was referred to me pursuant to 28 U.S.C. § 636(b) and Local Rule 301.6 for

review of Plaintiff's Motion for Judgment by Default.  ECF Nos. 16, 17.  Defendants were

properly served, ECF No. 10, failed to plead or otherwise respond to the complaint, and the

Clerk of the Court entered default against them.  ECF No. 12.  For the following reasons, I

recommend that Plaintiff's motion be granted in part and denied in part.[1]

**1.      Background.**

On August 15, 2013, Plaintiff Heidy Rivero filed a complaint against all Defendants.

ECF No. 1.  Count I alleges sexual harassment, Count II alleges constructive discharge, Count III

alleges battery, Count IV alleges intentional infliction of emotional harm, Count V alleges

negligent hiring and retention, Counts VI and IX allege violations of the Fair Labor Standards

Act, (FLSA), Count VII alleges violation of the Maryland Wage and Hour Law (MWHL), and

Counts VIII and X allege violation of the Maryland Wage Payment and Collection Law

(MWPCL).

---

[1] The parties are hereby advised of the provisions of Section 636(b)(1) of Title 28 of the United States
Code, which allows any party to file written objections to this Report and Recommendation within fourteen days
after being served with a copy.  A judge will then conduct a *de novo* review of those portions of the Report and
Recommendation to which objection is made.

The motion for default judgment, ECF No. 16, seeks judgment against all defendants, jointly and severally, as to Counts VI, VII, VIII, IX and X, in readily determinable amounts, and withdraws Count V. A hearing was requested as to damages under the remaining counts and was conducted on November 5, 2014. Plaintiff filed a fee petition on December 22, 2014. ECF No. 28. This Report and Recommendation will recommend that judgment be entered in the amounts explained below.

### a.   Liability.

In determining whether to award default judgment, the court takes as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Where, as here, none of the Defendants has sought to set aside the default as provided by Federal Rule of Civil Procedure 55(c), or suggested in any way that it has a meritorious defense, the standard for default judgment has been satisfied. *Fanning v. Hotel Mgmt. Advisors-Troy, LLC*, 282 F.R.D. 280, 283 (D.D.C. 2012).

### i.   Wage claims: Counts VI, VII, VIII, IX, and X.

Plaintiff has pled facts which establish liability as to Defendants Umberto's Italian Restaurant, Santos Medrano, Dionicia Medrano, Medbros Restaurant, Inc., and Angel Medrano under Counts VI, VII, VIII, IX, and X. Section 207(a)(1) of the FLSA and the Maryland Code, Labor and Employment Article, Section 3-413, mandate a minimum hourly wage of $7.25 for each hour worked up to forty hours per week, and time and a half for each additional hour. A tipped employee such as Plaintiff can be paid at lesser hourly rates under both statutes if the employee keeps all of the tips earned. However, the "tip credit" is lost if the employer fails to comply with this condition. *Richard, et al. v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977).

The complaint alleges that each of these five Defendants was an "employer" for purposes of wages owed under these statutes, and sets forth facts sufficiently indicating employer or successor status as to each defendant.  ECF No. 1 at ¶¶ 17, 195-97.  It alleges that Plaintiff worked as a server at Umberto's Restaurant from November 19, 2009, to March 29, 2010, working three days per week until December 2009, and six days per week from December 2009 to March 29, 2010, earning $20 in cash from the employers and approximately $100 in tips each day, but lost 20% of all tips received by credit card payment.  It alleges that these payments were below the statutory minimums.  ECF No. 1 at ¶¶ 44, 175-89.  It also alleges that Plaintiff worked for three days at Umberto's Night Club and was paid nothing for this work.  *Id.* at ¶¶ 36-37, 200-01.  Finally, it alleges that defendants failed to keep the statutorily required records of the hours Plaintiff worked.  *Id.* at ¶¶ 193-94.

The motion for default judgment contains exhibits, including written statements, documents, and deposition testimony, which corroborate the allegations in the complaint regarding the employer status of each defendant for purposes of the Federal and Maryland wage laws.  Ms. Rivero's declaration, ECF No. 16-1, confirms the allegations in the complaint regarding the number of hours she worked per week, the amount she was paid, and defendants' failure to qualify for the "tip credit."  These facts establish liability for minimum wages and overtime as to Counts VI, VII and VIII.  However, Plaintiff is not entitled to recover twice for a single injury.  *United States v. Rachel*, 289 F. Supp. 2d 688, 697 (D. Md. 2003).  She will receive the greatest recovery under Count VIII, and thus damages should not be awarded under Counts VI or VII.

Plaintiff also seeks judgment against Defendants Umberto's LLC, Dionicia Medrano, and Santos Medrano, under Counts IX (FLSA) and X (MWPLC) for failure to pay her for the three

days she worked at Umberto's Nightclub.  The MWPCL requires timely payment for all work

performed.  Md. Code, Lab. & Empl. Art., Title 3-505.  Plaintiff has established that she was not

paid for three days' work at Umberto's Nightclub and is entitled to judgment on this basis.

Again, she is entitled to recover only once for this violation and I recommend that judgment be

awarded under Count X, which provides the greater relief, and denied under Count IX.

### ii. Montgomery County Code claims: Sexual Harassment, Constructive Discharge

Plaintiff seeks judgment against Defendants Umberto's Italian Restaurant, Inc., Santos

Medrano, and Dionicia Medrano, for sexual harassment (Count I), and constructive discharge

(Count II) under Section 27-19(2) of the Montgomery County Code, which provides that an

employer "must not because of…sex…fail or refuse to hire, fail to accept the services of,

discharge any individual, or otherwise discriminate against any individual with respect to

compensation, terms, conditions, or privileges of employment."  Maryland law authorizes a

person who is subjected to a discriminatory act prohibited by the Montgomery County Code to

maintain a civil action for damages, injunctive relief, or other civil relief, and the Montgomery

County Code authorizes employees to pursue a civil action under Maryland law.  Md. Code

Ann., State Government § 20-1202(b); Mont. Co. Code § 27-9; *see Edgewood Management

Corp. v. Jackson*, 212 Md. App. 177 (2013); *see also Heilo v. Colombo Sav. Bank, F.S.B.*, 434

F.3d 249, 262 (4th Cir. 2006); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d. 1126, 1132-33

(4th Cir. 1995).  However, Maryland law defines an employer as a person who "has 15 or more

employees for each working day in each of 20 or more calendar weeks in the current or

preceding calendar year."  Md. Code Ann., State Government § 20-601(d)(1)(i).[2]  Maryland law

specifically exempts Baltimore County, but not Montgomery County, employees from the 15

---

[2] The Montgomery County Code defines an employer as "any person who employs one or more individuals in the
County." § 27-6.

employee requirement. *Compare* Md. Code Ann. State Government § 20-1202(b) with § 20-1203(a) and (b). Because Plaintiff has not alleged or shown that any Defendant had 15 or more employees, no Defendant is an employer under Maryland law and no remedy is available under Maryland Law. *Molesworth v. Brandon*, 341 Md. 621, 636-37 (1996); *see also Adams v. Morris,* F. Supp. 2d 632, 637 (D. Md. 2010). Judgment should be denied as to Counts I and II.

### iii.  Common law claims.

Plaintiff seeks judgment against Defendant Santos Medrano for battery (Count III) and intentional infliction of emotional harm (Count IV). To prove a battery, Plaintiff must show that the defendant's conduct was intended to bring about harmful or offensive conduct or the apprehension thereof. *Nelson v. Carroll*, 355 Md. 593, 601 (1999). To prove intentional infliction of emotional distress, Plaintiff must show that the conduct was intentional or reckless, was extreme and outrageous, and that the conduct caused her to suffer severe emotional distress. *Hamilton v. Ford Motor Credit Co.,* 66 Md. App. 46 (1986). She must show the nature, intensity, and duration of the distress with reasonable certainty, *Manikhi v. Mass Transit Admin.*, 360 Md. 333 (2000), and either a substantial physical injury or a resultant pathological physical or mental state. *Caldor, Inc. v. Bowden*, 330 Md. 632 (1993). The tort of intentional infliction of emotional distress and other torts arising from the same conduct, such as battery, are mutually exclusive and a plaintiff cannot recover for both. *Vance v. Vance*, 41 Md. App. 130, 141 (1979).

During her employment at Umberto's Italian Restaurant, Santos Medrano treated Plaintiff differently than other employees. He invited her to have breakfast with him, which made her uncomfortable because she knew that he was married. He touched her buttocks and made comments about her appearance. He claimed to have a relationship with her 16-year-old daughter and said that he would have a child with the daughter. Needing income to support

herself and her four children, Plaintiff attempted to find another job without success, continued to work at Umberto's Italian Restaurant, and attempted to avoid contact with Santos Medrano.

Santos Medrano's harassment became more physical in the weeks leading up to the battery. He continued to speak of Plaintiff's daughter to the extent that Plaintiff felt unsafe working there. The last day of her employment, Santos Medrano sent the other waiter and the cook home. He called Plaintiff into the back of the restaurant, where he grabbed her arms and pulled her to him. When she pushed away, he laughed and sent the busboy and assistant cook home. This made her very fearful as she was now alone with him in the restaurant. When she observed messages from him on her phone that night saying that he wanted to be with her, she became panicked but was afraid to leave for fear of losing her income. She went to the back of the restaurant to obtain bread for a customer, where Santos Medrano approached her from behind, embraced her, grabbed her breasts, and tried to kiss her. He then returned to the kitchen, and Plaintiff worked until the restaurant closed. Thinking that he had left, she turned off the lights and returned to the back to get her keys, where he grabbed her in the dark, held her by the arms and pushed her against the wall. She asked him to let her go. He continued to kiss her neck and face, touched her breasts, unzipped her pants, held her legs and penetrated her several times with his fingers, telling her that she should let him touch her and do what he wanted. Finally she was able to push him away, but he followed her to her car, shouting at her. As she drove away, he called her twice and sent her messages.

Plaintiff drove directly to the police station and reported the incident. When she returned home, she realized that she was bleeding and went to the hospital the next day. She had bruises on her back, lips, and breasts. That day, Santos Medrano texted her that it was all a joke and would not happen again. She responded that it was not a joke and that she was not coming back

to work.  Dionicia Medrano also directed Plaintiff to return to work and offered to help her if Santos Medrano had done anything to her.  Plaintiff took out a protective order against Santos Medrano.

Plaintiff testified that the events made her feel like trash and worthless.  She did not work for almost five months because she could not be with anyone, even her own children.  She had frequent headaches and several weeks after the attack she returned to the hospital, where she fainted at the door and woke up in a hospital room.  Medication was prescribed and counselling was recommended.  She saw a therapist weekly and received medication from a psychologist because she could not sleep, had no desire to live, and had difficulty with normal functioning.  She continues to take antidepressants and suffer from migraine headaches.  The headaches come two to three times per week and require her to retreat to a dark, silent place.  The medication causes side effects such as drowsiness, fatigue, and nausea.  She does not want to leave her home, even with her children, and is very cautious with people at her job.  Memories, unexpected events, and men getting close to her cause stress and depress her.  Formerly a social drinker, she does not drink alcohol now because she is afraid of not being able to protect herself and her children.  Prior to the attack, she was social, made friends easily, and went out frequently with her children.  Now she is reserved, lacks energy and enthusiasm, has gained thirty pounds, has nightmares, is forgetful, and refuses to talk about her children with others.  Her ability to relate to her children, other family members, and members of the opposite sex, and to accept certain types of employment, have been negatively impacted.  She testified that she did not have any mental or physical health conditions prior to the attack.

The conduct to which Plaintiff testified, and described in the complaint and in her declaration, compl. ¶¶ 82, 94, 96, 105, 115-22, decl. ¶¶ 8-31, culminating in the sexual assault

for which Santos Medrano entered a guilty plea, compl. ¶¶ 115-20, 141-42, decl. ¶¶ 27-29, ECF

No. 16-9, 16-10, sufficiently establishes that Plaintiff was battered by Santos Medrano.  Because

Plaintiff here suffered both physical and emotional distress, the battery count will provide

complete relief and I recommend that judgment be awarded against Defendant Santos Medrano

as to Count III only.

    **b.  Damages.**

        **i.  MWPCL (Count VIII).**

If the court finds that liability is established, it should then determine appropriate

damages.  *Agora Fin. Inc. v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010) (citing *Ryan*, 253

F.3d at 780-81).  The court must make an independent determination of damages.  *Id.*  Where the

plaintiff submits with her motion for default judgment an affidavit and documentary evidence

which are sufficient to establish the amount that should be awarded, no hearing is necessary.

Fed. Rule Civ. P. 55(b)(2); *General Ins. Co. v. O'Keefe*, 275 F. Supp. 107, 109 (D. Md. 1967).

Instead, the court may rely on the affidavit and other evidence to determine the appropriate sum

to award.  *See Fanning*, 282 F.R.D. at 283 (quoting *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17

(D.D.C. 2001)); *see also United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).  In

a wage case, when the employer breaches its obligation to keep records of the number of hours

worked, the court can rely on the employee's evidence to draw a just and reasonable inference.

*McLaughlin v. Murphy*, 436 F. Supp. 2d 732, 737 (D. Md. 2005).  The employee does not have

to prove each hour with absolute accuracy.  *Pforr v. Food Lion, Inc.*, 851 F.2d. 106, 108 (4th Cir.

1988); *see also Orellana v. Cienna Prop., LLC*, No. JKB 11-2515, 2012 U.S. Dist. LEXIS 7459,

at *5 (D. Md. May 23, 2012).

Plaintiff's Declaration under oath states that she worked Monday through Saturday for approximately 66 hours per week for four months.  ECF No. 16-1 at ¶ 7.  I recommend that the court rely on that statement to award Ms. Rivero 40 hours per week at $7.25 per hour, totaling $290.00 per week, and 26 hours per week at $10.875 per hour, or $282.75 per week, minus the $20 per day she actually was paid, or $120 per six day work week, for 17.2 weeks, for a total award of $7,787.30.  The FLSA also provides for an award of an amount equal to the unpaid wages as liquidated damages, 29 U.S.C. § 216(b).  However, Plaintiff seeks, under Count VIII, treble damages for this same failure to pay minimum wage and overtime.  The MWPCL permits a successful plaintiff to recover treble damages for unpaid overtime absent a bona fide dispute over her entitlement to those wages.  *See Marshall v. Safeway, Inc.*, 437 Md. 542, 560-61 (2014); *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 654 (2014).  Defendants have not met their burden of showing a bona fide dispute, and the court should grant judgment as to Count VIII and award treble damages in the amount of $23,361.90.[3]

Plaintiff also is entitled to judgment under Count X (MWPCL) against Defendants Umberto's LLC, Dionicia Medrano, and Santos Medrano, for failure to pay her any wages for the eighteen hours she worked at Umberto's Nightclub.  ECF No. 24-1 at ¶¶ 30-32.  Treble damages under the MWPCL for these unpaid wages are appropriate since Plaintiff again alleges that there was no bona fide dispute as to her entitlement to be paid for this work.  Thus, the court should award minimum wages of $7.25 per hour for eighteen hours, totaling $130.50, trebled for a total award of $391.50 under Count X.

---

[3] The Maryland statute exempts restaurant workers employed by a restaurant with an annual gross income of $400,000 or less from overtime coverage.  Md. Code Ann., Lab. & Empl. § 3-403 (11).  Defendants bear the burden of establishing that Plaintiff is an exempt restaurant employee, *Smith v. ABC Training Ctr. of Md.*, No. JFM 13-306 2013 WL 3984360 at *9 (D. Md. Aug. 1, 2013), and have offered no evidence to that effect.

**ii. Battery.**

In battery cases, both compensatory and punitive damages may be awarded.  *Green v. Washington Suburban Sanitary Comm'n*, 259 Md. 206 (1970) (compensatory damages); *Vancherie v. Siperly*, 243 Md. 366, 373 (1966) (punitive damages).  Plaintiff's complaint seeks compensatory damages for lost wages, medical expenses, and physical and emotional pain and suffering caused by this attack.  However, no medical expenses have been submitted and accordingly the court need consider only lost wages and the physical and emotional pain and suffering.

Plaintiff's testimony regarding the physical and emotional effects of this attack was supplemented by the testimony of psychiatrist Dr. Carolina Klein.  Dr. Klein evaluated Plaintiff on August 27, 2012 and October 28, 2014.  *See* Hearing Ex. 11.  Dr. Klein also reviewed the legal documents relating to this complaint, Plaintiff's medical and mental health records, and her medication orders.  Dr. Klein diagnosed Plaintiff with chronic post-traumatic stress disorder (PTSD), major depressive disorder, and panic disorder.  Dr. Klein stated that the effects as reported by Plaintiff are typical of these disorders and were, and continue to be, actually suffered by Plaintiff.  Dr. Klein believes that Plaintiff's overall prognosis is fair, meaning that she has indicators of both progress and long term effects.  She concluded, within a reasonable degree of medical certainty, that Plaintiff suffered and continues to suffer from severe emotional distress as a result of the events which occurred on March 29, 2010.

Plaintiff also presented testimony from Montgomery County Police Officer Omar Guerrero.  Officer Guerrero has a bachelor's degree in criminology and has worked as a Montgomery County Police officer for the past eight years.  He is fluent in Plaintiff's language, Spanish.  He was assigned to Plaintiff's case on March 31, 2010.  He identified Plaintiff's

hearing Exhibits 3 and 4 as photographs of Plaintiff's injuries after the March 29, 2010 attack. He opined that the photographs are consistent with Plaintiff's account of the attack. He identified Plaintiff's hearing exhibit 1 as photos he took of text messages Plaintiff received from Santos Medrano.

When Officer Guerrero interviewed Plaintiff, she appeared shaken but remarkably strong. She advised him that prior to the attack Santos Medrano had frequently called her "grandmother" because he wanted to father a child with her daughter, and touched her inappropriately. He also interviewed Santos Medrano, who admitted to calling Plaintiff "grandmother" but did not appear to take her allegations seriously. Based on his investigation, Officer Guerrero concluded that the assault on Plaintiff was violent and unwelcome. He applied for charges of second degree assault and fourth degree sexual offense. Mr. Medrano ultimately pled guilty to fourth degree sexual offense.

In closing, Plaintiff's counsel summarized the evidence regarding the injuries Plaintiff suffered, their extent, and their duration. He noted that the attack was perpetrated by Plaintiff's employer, who held a position of authority over her. He requested compensatory damages of $500,000 and punitive damages of $500,000.

I conclude that Plaintiff was subjected to unwanted touching and verbal harassment during the four months of her employment, which culminated in a sexual assault which caused physical and emotional harm. Santos Medrano's conduct was particularly egregious because, as Plaintiff's employer, he enjoyed a position of authority over her.

Plaintiff's lost wages are easily quantified. Her unrebutted testimony, which I find to be credible, established that she could not work for a specific period of months and subsequently earned less than she had earned at Umberto's. Under Maryland law, Plaintiff is entitled to

recover her lost wages.  Md. Code Ann., State Gov't § 20-1013(d); 20-1009(b).  She seeks lost

wages as follows:  For the 21 weeks that she was unable to work (March 30, 2010 to August 25,

2010), $572.75 per week, the amount she should have earned at Umberto's Italian Restaurant, for

a total of $12, 027.75.  She worked at Nick's Diner from August 26, 2010 to October 2, 2013.

ECF No. 24-1 at 2.  However, she worked only four days per week, earning an average $450 per

week, or $122.75 less than she should have earned at Umberto's Italian Restaurant, for a total

loss of $16,203.00.  ECF No. 24-1.  Plaintiff should be awarded $28,230.75 in total for the wage

loss caused by the battery.

I find Plaintiff's evidence regarding the emotional effects of this conduct to be only

partially credible.  Dr. Klein, in particular, was not a treating source but rather was engaged by

counsel for litigation purposes.  Dr. Klein examined mental health treatment records only

through May of 2012, Ex. 11 at 2, and none of those records was provided to the court.  Dr.

Klein provided a "forensic opinion" that Plaintiff suffers from numerous psychiatric illnesses

likely due to the traumatic experience that occurred on March 29, 2010.  Ex. 11 at 3.

While I do not question that Medrano's abuse was extremely traumatic, Plaintiff told Dr.

Klein that she had been physically abused by a former husband, still bore scars from his beatings,

and that the husband's abuse occurred over a four year period ending in 2006 and resulted in a

criminal conviction.  Ex. 11 at 15.  Yet Dr. Klein writes that prior to the Medrano incident,

Plaintiff " never had episodes consistent with anxiety, depression, mania or psychosis."  *Id.* at 12.

It is simply not credible that Plaintiff could have no symptoms or effects from extended and

extreme physical and emotional abuse at the hands of a husband, and yet continue to be so

profoundly affected by Medrano's harassment and single attack.  Dr. Klein does not appear to

have considered the likely effects of the prior abuse that Plaintiff suffered when reaching her "forensic opinion."

In addition, Plaintiff's testimony that she still does not want to leave her home, has memory problems, and cannot relate to her children, is inconsistent with her prior reports. She reported to Dr. Klein that she was unable to care for her children for only four months, *id.* at 6, and Dr. Klein found Plaintiff's immediate and remote memory to be unimpaired. *Id.* at 16. Plaintiff also claims to be unable to relate to members of the opposite sex, but the first person she contacted for help after the battery was male; indeed, she told Dr. Klein that he was the one who encouraged her to report the assault and accompanied her to the police station. *Id.* Two days after the attack, Plaintiff was able to recount it to a male police officer, who found her to be shaken but remarkably strong.

In sum, Dr. Klein's evaluation, and the dramatic alteration of Plaintiff's life allegedly caused solely by Medrano's conduct, is only partly credible. I believe that a damages award of $150,000 is an appropriate measure of the injury Plaintiff suffered at the hand of Santos Medrano.

Punitive damages are available where, as here, there is clear and convincing evidence that defendant's conduct is heinous, characterized by evil motive or intent to injure. *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 454 (Md. 1992). Their purpose is to punish the wrongdoer and to deter both the wrongdoer and others from engaging in similar misconduct. *Caldor, Inc. v. Bowden*, 330 Md. 635, 661 (1993). However, they must relate not only to the degree of culpability but also to the wrongdoer's ability to pay. *Fraidin v. Weitzman*, 93 Md. App. 168, 211 (Md. App. 1992). While there was clear evidence of Medrano's degree of culpability, there was none regarding his ability to pay. Under Maryland law, "virtually every case reviewing the

amount of the award of punitive damages involves, directly or indirectly, the financial condition

of the defendant and the ability of the defendant to pay the award … a review of the defendant's

financial condition is a matter of the utmost importance in both the jury's decision and the

court's review of the award." *Darcars Motors of Silver Spring, Inc., v. Borzym*, 150 Md. App.

18, 58 (2003); *see also Bowden v. Caldor*, 350 Md. 4, 28 (1998) (defendant's ability to pay is "a

limiting factor which must be considered").  In *Fraidin,* the trial court's award of punitive

damages was reversed because of the failure to consider the defendants' net worth.  Although

Medrano's conduct cries out for punitive damages, the absence of evidence of his ability to pay

means that they cannot be awarded.

   In sum, I recommend an award of $28,230.75 in lost wages and $150,000 in non-economic

damages, for a total award of $178,230.75.

### C.   Attorney's Fees.

   The payment of attorney's fees and costs to employees who prevail on FLSA claims is

mandatory, 29 U.S.C. § 216(b), while the amount awarded is discretionary.  *Burnley v. Short*,

730 F.2d 136, 141 (4th Cir. 1984) (citing *VanDyke v. Bluefield Gas Co.*, 210 F.2d 620, 622 (4th

Cir. 1954)).  Attorney's fees also are available for violations of the Maryland Wage laws.  Md.

Code Ann., Lab. & Empl. § 3-427(c).  Plaintiff prevailed on her claim for unpaid wages and

overtime and is entitled to payment of reasonable attorney's fees and costs.

   To determine the amount of attorney's fees that is reasonable, the court must calculate the

lodestar, "the number of hours reasonably expended on litigation multiplied by a reasonable

hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[4]  The number of hours it was

reasonable to devote to the case and the reasonable hourly rates charged for personnel working

---

[4] Although *Hensley* concerned attorney's fees under 42 U.S.C. § 1988, the standards set forth are "applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party,'" *Hensley*, 461 U.S. at 433 n.7, and are therefore pertinent to an award of fees under the FLSA.

on the case are to be determined through consideration of twelve factors derived from the Fifth Circuit's opinion in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and endorsed by the Supreme Court in *Hensley*, 461 U.S. at 430 n.3.  *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986).  These factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee or rates; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.  Additional circumstances, such as the achievement of "exceptional success," may justify an upward adjustment of the fee award.  *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley*, 461 U.S. at 435.

### i. <u>Hourly Rate</u>.

The hourly rates requested here are based on the court's Local Rules, Appendix B, Rules and Guidelines for Determining Attorney's Fees in Certain Cases, to wit: $425/hr. for Daniel A. Katz (a lawyer in practice for 18 years, ECF No. 68 at 8, Ex. 1, ¶ 18); $300/hr for Stephanie Herrera (a lawyer admitted in practice for 11 years, *id*.); $125/hr for paralegals, and $150/hr for law clerks who are members of the Maryland bar.  *Id*. at 8-9.  These hourly rates are consistent with application of the relevant *Johnson* factors, including the skill requisite to perform the legal services, the customary rates for such services, and the experience, reputation, and ability of the attorneys, and the court should calculate the lodestar on the basis of those rates.

ii.     **Number of Hours Reasonably Expended**.

Plaintiff requests the payment of a total of 599.8 hours.  ECF No. 28-2 at 78.  However, Plaintiff's petition does not separate the requested time relating to the wage claims, for which fees are recoverable, and time devoted to the violations of Maryland employment law, as to which Plaintiff is not a prevailing party, and battery, for which fees are not recoverable.  Plaintiff must revise her fee request to exclude hours devoted to those claims before the court can determine an appropriate fee award.

d.     **Conclusion**.

For the reasons set forth above, the court should:

(A)  Grant Plaintiff's motion for judgment by default as to Counts III, VIII and X only;

(B)  Award damages against Defendants Umberto's Italian Restaurant, Inc., Santos Medrano, Dionicia Medrano, Medgros Restaurant, Inc., and Angel Medrano, under Count VIII, in the amount of $23,361.90;

(C) Award damages against Defendants Umberto's LLC, Dionicia Medrano, and Santos Medrano, under Count X, in the amount of $391.50;

(D) Award damages against Defendant Santos Medrano under Count III,  in the amount of $178,230.75; and

(E) Permit Plaintiff's counsel to resubmit the fee petition to reflect only time spent on the wage claims, separately identifying the number of hours devoted to Count X, as to which only three of the five defendants are liable.

Date: January 23, 2015                              _____/S/_____ ____
                                                                JILLYN K. SCHULZE
                                                         United States Magistrate Judge